SCOTT E. BRADFORD, OSB #062824
United States Attorney
District of Oregon
**NATASHA M. GEILING, CASB #341432**
Assistant United States Attorney
Natasha.Geiling@usdoj.gov
1000 SW Third Avenue, Suite 600
Portland, OR 97204-2902
Telephone: (503) 727-1000
Attorneys for United States of America

**UNITED STATES DISTRICT COURT**

**DISTRICT OF OREGON**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **3:26-mj-00236** |
| **v.** | **GOVERNMENT'S MEMORANDUM IN SUPPORT OF DETENTION** |
| **RYAN SHERMAN,** | |
| **Defendant.** | |

Defendant—who occupies a position of public trust as the current Postmaster for Seaside, Oregon—is charged with the possession and distribution of child sexual abuse material (CSAM), as well as the production of obscene visual representations of child sexual abuse. Defendant possessed and distributed dozens of images and videos depicting the graphic sexual abuse of children, including numerous videos depicting sexual abuse of toddlers. Defendant also produced obscene child sexual abuse images for people with whom he communicated via the internet, taking seemingly innocuous photographs of children and using artificial intelligence (AI) to turn them into obscene images. When asked by an individual seeking obscene images whether he had any limit to the images he would or could create, defendant bragged that he had "none." For the charges that the defendant faces for this exploitative and dangerous conduct, the law presumes

that he should be detained. This Court should uphold that presumption and order the defendant detained pending trial as a risk to the community.

## I. FACTUAL BACKGROUND

### A. Seaside Police Begins an Investigation into Defendant

On December 19, 2025, Seaside Police began an investigation into the defendant based on a National Center for Missing and Exploited Children (NCMEC) Report by the Oregon Department of Justice. The report was initiated by the company MediaLab.ai in reference to a user of their social media platform Kik.com. The report states that between September 21, 2025, and October 19, 2025, Kik.com user "lilgrlfanatic_eps" uploaded twenty files of suspected CSAM. Based on the IP address provided in the NCMEC tip, Seaside Police identified the IP address customer as the defendant.

On June 16, 2026, Seaside Police arrested the defendant on an unrelated bench warrant involving a drunk driving charge. At the time of that arrest, Seaside Police seized a Google Pixel cellphone that the defendant had on his person. Seaside Police also executed a search warrant authorizing seizure of a Samsung S20 cellphone; when Seaside Police searched the defendant's home for that Samsung cellphone, they also located a third cellphone (a Samsung Galaxy) as well as a Kingston 16GB microSD storage medium sitting in plain view on a nightstand next to the defendant's bed.

### B. Review of Defendant's Kik Account

On August 7, 2026, the FBI served a search warrant authorizing the search of data held by MediaLab.ai for the Kik date referenced in the NCMEC report. A subsequent review of the data provided pursuant to that warrant revealed 72 media files, most of which were pornographic in nature. All twenty files of CSAM noted in the NCMEC report were present in the data, as well

as additional CSAM files. These files include videos depicting the sexual abuse of prepubescent minors, including videos of oral and vaginal penetration as well as at least one video of a prepubescent minor being forced to perform oral sex on an adult.

The data also included at least three images that appear to have been edited using AI to produce obscene images. One such image is a 4-second video that begins with a fully clothed preteen female, appearing to be a common first day of school type of image. As the video plays, the girl appears to rip off her shirt and backpack as adult-sized breasts form on her chest. The girl then touches the waist of her skirt which falls, revealing bare female genitalia. In response to a user asking the defendant if he had any limits with respect to the AI production of this type of obscene material, the defendant replied "none."

Also present in the Kik data were several conversations between the defendant and other Kik users, in which the defendant sent CSAM materials to the other users. In one conversation with a user with whom the defendant shared dozens of CSAM images, the defendant said "[m]e and my buddies trade a lot of cp we collect," with "cp" referring to CSAM, and stated that "[his] favorites are like 11-16" years old though he and others share CSAM with children "[t]ypically 4 [years old] and up."

**C. Review of Defendant's Devices**

On August 7, 2026, the FBI, pursuant to a warrant, seized the four digital devices—three cellphones and one storage drive—held by the Seaside Police Department. The FBI subsequently conducted a search for data held on one of the cellphones (the Samsung S20) as well as the microSD card.

Review of the microSD card revealed over 11,000 photographs and more than 350 videos. Though review of the microSD card is ongoing, numerous videos and images of CSAM

have been found including at least 40 additional videos depicting the sexual abuse of children and several videos depicting the sexual abuse of toddlers. These include videos depicting both vaginal and anal penetration of toddlers.

Review of the Samsung S20 also revealed that the defendant used end-to-end encryption communication applications like Sessions and SimpleX to distribute and receive CSAM material. On May 31, 2026, for instance, the defendant used Session to send a 93-second video of an adult ejaculating on the back of a nude prepubescent girl.

### D. Defendant's Arrest

On August 24, 2026, the defendant was charged via criminal complaint with possession and distribution of child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B), (b)(2) and 18 U.S.C. § 2252A(a)(2), (b)(1), as well as with production of obscene visual representation of child sexual abuse, in violation of 18 U.S.C. § 1466A(a)(1). The distribution charge carries a statutory mandatory minimum penalty of five years imprisonment; the production charge carries a statutory mandatory minimum penalty of five years imprisonment. All charges would require the defendant, if convicted, to register as a sex offender for at least fifteen years.

Defendant was arrested on August 25, 2026. He is scheduled to make his initial appearance on August 26, 2026.

## II. LEGAL STANDARD

The Bail Reform Act provides that defendants shall be detained pending trial where "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e). The government bears the burden of establishing danger to the community by clear and convincing evidence; risk of flight need only be proved by a preponderance of the evidence. *United States v.*

*Aitken*, 898 F.2d 104, 107 (9th Cir. 1990); *United States v. Winsor*, 785 F.2d 755, 757 (9th Cir. 1986). The Federal Rules of Evidence do not apply in pretrial detention proceedings. Fed. R. Evid. 1101(d)(3); 18 U.S.C. § 3142(f). Thus, the parties may present evidence by proffer or through hearsay. *Winsor*, 785 F.2d at 756. *See also United States v. Bibbs*, 488 F. Supp. 2d 925, 925-26 (N.D. Cal. 2007).

Where, as here, there is probable cause to believe that a defendant committed a specified offense against a minor victim (including receiving child pornography), a rebuttable presumption arises that "no condition or combination of conditions of release will reasonably assure the appearance of the person as required and the safety of the community. 18 U.S.C. § 3142(e)(3)(E). The burden shifts to the defendant to rebut the presumption. *United States v. Carbone*, 793 F.2d 559, 560 (3d Cir. 1986); *cf. United States v. Hir*, 517 F.3d 1081, 1086 (9th Cir. 2008) (noting that in a terrorism case involving the presumption, "the presumption shifts a burden of production to the defendant, [but] the burden of persuasion remains with the government").

Even if it is rebutted, however, the presumption does not disappear; it continues to carry evidentiary weight. *See Hir*, 517 F.3d at 1086 ("The presumption is not erased when a defendant proffers evidence to rebut it; rather the presumption remains in the case as an evidentiary finding militating against release, to be weighed along with other evidence relevant to factors listed in § 3142(g)") (internal quotations and citation omitted). Other factors to consider include: (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence or involves a minor victim; (2) the weight of the evidence against the person; (3) the history and characteristics of the person, including the person's character, physical and mental condition, family and community ties, employment, financial resources, past criminal conduct,

history relating to drug or alcohol abuse, and supervision status at the time of the current offense; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. 18 U.S.C. § 3142(g); *Hir*, 517 F.3d at 1086.[1] Those factors weigh in favor of detention in this case.

## III. ARGUMENT

Based on the charges in the criminal complaint, the law presumes that no combination of conditions can adequately ensure the safety of the community. Even if this Court were to find that the defendant has sufficiently rebutted the presumption of detention, however, the factors listed in Section 3142(g)—combined with the background evidentiary finding of presumption—weigh in favor of detention.

### A. Nature and Circumstances of the Offense

The nature and circumstances of the offense charged weigh in favor of detention. Defendant is charged with the possession and distribution of CSAM, as well as the production of obscene depictions of child sexual abuse. Though the criminal complaint alleges one count of each alleged crime, the criminal conduct at issue spans multiple instances over the course of twenty months, from September 2025 to May 2026. Defendant repeatedly accessed and distributed CSAM—in his own words, collected and traded dozens of images of the sexual abuse of children—and did so knowingly.

The distribution of CSAM is a crime of such intrinsic harm that Congress has legislated a presumption of detention under the Bail Reform Act. 18 U.S.C. § 3142(e)(3)(E). The extent of

---

[1] Child pornography offenses are considered crimes of violence under the Bail Reform Act. *See* 18 U.S.C. § 3156(a)(4)(C) (defining the term "crime of violence" to include "any felony under chapter 109A, 110, or 117" of Title 18. Child pornography offenses are in Chapter 110.

harm that distribution of CSAM causes is especially apparent in a case such as this, where the defendant is alleged to have engaged in the distribution of CSAM materials—including materials showing the sexual abuse of toddlers, arguably some of the most vulnerable victims imaginable—over a period spanning more than a year, and where the defendant did through at least partially through encrypted services aimed at obfuscating his conduct from law enforcement.

Courts considering the nature of the offense have frequently found that the charges of possession and distribution of CSAM weigh in favor of detention. *See, e.g.*, *United States v. Marginy*, No. 20-mj-70755-MAG-1, 2020 WL 4260622, (N.D. Cal. July 24, 2020) (finding that the nature of the offense weighed against the defendant's release where defendant was charged with possessing and distributing child pornography); *United States v. Bell*, No. SACR 08–00087–MMM, 2008 WL 11411709, at *3 (C.D. Cal. June 6, 2008) (finding that the charge of possession weighs in favor of detention); *United States v. Reiner*, 468 F.Supp.2d 393, 397 (E.D.N.Y. 2006) (stating that possession of child pornography was an "extremely serious charge[ ] that [bore] directly on the issue of danger"); *United States v. Devinna*, 5 F.Supp.2d 872, 873 (E.D. Cal. 1998) (considering release following a guilty plea to a child pornography charge, and concluding that the charge, "by definition, entails dangers to the community").

**B. Weight of the Evidence**

The weight of the evidence weighs in favor of detention. The videos and images found on the defendant's Kik account, as well as the defendant's microSD and one of the defendant's cell phones, clearly show that the defendant possessed for himself and distributed to others several dozen images and videos depicting child sexual abuse. The evidence against the defendant will likely be strengthened as the forensic examination of the defendant's cell phones is completed.

**C. Defendant's History and Characteristics**

Defendant a limited criminal history and was not on supervision at the time of the offenses.

Nonetheless, in addition to the details of the charged offenses, this Court should consider that, at the time that the defendant was engaging in the conduct alleged in the complaint, he occupied a position of public trust as the Postmaster for Seaside, Oregon. The complaint does not allege that the defendant utilized his position to carry out the conduct for which he is charged. Nevertheless, the defendant occupied a position that directly interfaces with the broader Seaside community while engaging in the charged conduct.

**D. Nature and Seriousness of the Danger Posed**

The offenses with which the defendant has been charged involve some of the most vulnerable victims imaginable—very young children who were not only subjected to terrible sexual abuse, but whose abuse was memorialized in images and videos that the defendant collected and exchanged as if they were trading cards. Courts have recognized that CSAM-related offenses are particularly "insidious offense[s] since they take[] advantage of a particularly vulnerable segment of society, children." *U.S. v. Schenberger*, 498 F. Supp.2d 738, 743 (D.N.J. 2007) (citing *U.S. v. MacEwan*, 445 F.3d 237, 250 (3d Cir. 2006)). Moreover, "the mere existence of and traffic in child pornographic images creates the potential for many types of harm in the community." *Id.*

Defendant engaged, repeatedly, in the distribution and possession of material depicting the sexual abuse of minors, including toddlers. He did so individually and as part of a larger online community, and he often did so using means meant to obfuscate his actions. Given the ubiquity of internet-connected devices, and the defendant's proven tendency to attempt to use

technology services to hide his actions from detection, there is no combination of conditions that can reasonably assure that the defendant, if released, will not re-engage in the very conduct with which he is charged. In so doing, the defendant would continue to perpetuate the sexual abuse and exploitation of minor victims, endangering this community and others. As such, there are no combination of conditions that can reasonably assure the safety of the community.

## IV. CONCLUSION

The law presumes that the defendant should be detained. There are no conditions or combination of conditions that will ensure the safety of the community or the appearance of the defendant. *See* 18 U.S.C. § 3142(f)(2)(A). The government requests that this Court order the defendant to be detained pending trial.

Dated: August 25, 2026

Respectfully submitted,

SCOTT E. BRADFORD
United States Attorney

*/s/ Natasha M. Geiling*___
NATASHA M. GEILING, CASB #341432
Assistant United States Attorney